IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**FILED**
August 04, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ad_____
DEPUTY

| | |
|---|---|
| DYNAMIC TICKET SYSTEMS LLC,<br><br>Plaintiff,<br><br>v.<br><br>TICKETMASTER LLC and LIVE NATION WORLDWIDE, INC.,<br><br>Defendants. | Civil Action No. 6:23-cv-560<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dynamic Ticket Systems LLC ("DTS" or "Plaintiff"), for its Complaint against Defendants Ticketmaster LLC, ("Ticketmaster") and Live Nation Worldwide, Inc. ("Live Nation") (individually each a "Defendant" and collectively "Defendants") alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. Plaintiff DTS is a limited liability company organized under the laws of the State of Delaware with a place of business at 356 Greenwood Court, Villanova, PA 19085.

3. On information and belief, Ticketmaster is a limited liability company organized under the laws of the Commonwealth of Virginia with a place of business at 7060 Hollywood Boulevard, Hollywood, California 90028, and can be served through its registered agent, Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, DE 19810. On information and belief, Ticketmaster sells, offers to sell, and/or uses

products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

4. On information and belief Live Nation is a corporation organized and existing under the laws of the State of Delaware with a place of business at 9348 Civic Center Drive, Beverly Hills, California 90210, and can be served through its registered agent, Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, DE 19810. On information and belief Live Nation sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

5. On information and belief, Ticketmaster and Live Nation are wholly-owned subsidiaries of Live Nation Entertainment, Inc., having a place of business at 9348 Civic Center Drive, Beverly Hills, California 90210.

## JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b). On information and belief, each Defendant has committed acts of infringement in this judicial district and has a regular and established place of business within this judicial district.

9. On information and belief, each Defendant is subject to this Court's general and specific personal jurisdiction because each Defendant has sufficient minimum contacts within the State of Texas and this judicial district, pursuant to due process and/or the Texas Long Arm

Statute because each Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district, because each Defendant regularly conducts and solicits business within the State of Texas and within this judicial district, and because Plaintiff's causes of action arise directly from each of Defendant's business contacts and other activities in the State of Texas and this judicial district.

10. In particular, this Court has personal jurisdiction over Ticketmaster because Ticketmaster has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas and this judicial district. In particular, this Court has personal jurisdiction over Ticketmaster because, inter alia, Ticketmaster, on information and belief: (1) has substantial, continuous, and systematic business contacts with the State and this judicial district; (2) enjoys substantial income from its operations in this State and this judicial district; and (3) solicits business and makes, uses, offers for sale, and/or sells infringing products and services in this State and this judicial district.

11. Ticketmaster has purposefully availed itself to the privileges of conducting business within this judicial district, has established sufficient minimum contacts with the judicial district such that it reasonably should know and expect that it could be hauled into court in this judicial district, has purposefully directed activities at residents of this judicial district, and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

12. Ticketmaster has purposefully directed activities at residents of this judicial district, including the implementation and use of its primary and secondary market electronic ticket sales platform and venue access control systems embodying and practicing the patented inventions, thereby committing and continuing to commit acts of patent infringement alleged herein.  On

information and belief, Ticketmaster regularly conducts and solicits business in this judicial district, including through contracts for the implementation and use of its integrated primary and secondary market electronic ticket sales platform and venue access control systems with the owners of at least the following event venues located in this judicial district: (1) Austin City Limits Live at the Moody Theater, 310 W. Willie Nelson Blvd., Austin, Texas 78701; (2) 3TEN Austin City Limits Live, 310 W. Willie Nelson Blvd., Suite 1A, Austin, Texas 78701; (3) Germania Insurance Amphitheater, 9201 Circuit of the Americas Blvd., Del Valle, Texas 78617; (4) Bold Stadium, 9201 Circuit of the Americas Blvd., Del Valle, Texas 78617; (5) H-E-B Center at Cedar Park, 2100 Avenue of the Stars, Cedar Park, Texas 78613; (6) Austin Country Club, 4408 Long Champ Dr., Austin, Texas 78746; (7) McLane Stadium, 1001 S. M.L.K. Jr. Blvd., Waco, Texas 76704; (8) AT&T Center, 1 AT&T Center Parkway, San Antonio, Texas 78219; (9) Alamodome Stadium, 100 Montana Street, San Antonio, Texas 78203; (10) Aztec Theatre, 104 N. St. Mary's Street, San Antonio, Texas 78205; (11) Jo Long Theatre, 226 N. Hackberry, San Antonio, Texas 78202; (12) Little Carver Theater, 226 N. Hackberry, San Antonio, Texas 78202; (13) Majestic Theatre, 224 E. Houston Street, San Antonio, Texas 78205; (14) Charline McCombs Empire Theatre, 226 N. St. Mary's Street, San Antonio, Texas 78205; TPC San Antonio, 23808 Resort Parkway, San Antonio, Texas 78261; (15) Whitewater Amphitheater, 11860 FM306 Suite 1, New Braunfels, Texas 78132; (16) Abraham Chavez Theatre, 1 Civic Center Plaza, El Paso, Texas 79901; (17) Don Haskins Center, 151 Glory Road, El Paso, Texas 79902; (18) The Plaza Theatre Performing Arts Center, 125 W. Mills Avenue, El Paso, Texas79901; and (19) El Paso County Coliseum, 4100 E. Paisano Drive, El Paso, Texas 79905.  Ticketmaster has derived and continues to derive substantial revenues from its

implementation, use, offer for sale and sale of the infringing primary and secondary market electronic ticket sales platform and venue access control systems in this judicial district.

13. Venue is proper in this judicial district for Ticketmaster under 28 U.S.C. § 1400(b) because, among other reasons, Ticketmaster is registered to do business in the State of Texas, has committed acts of infringement in this judicial district, and has a regular and established place of business within this judicial district.

14. On information and belief, Ticketmaster has a significant physical presence in this judicial district from which it engages in regular and established business.  Specifically, on information and belief, Ticketmaster contracts with owners of the event venues in this judicial district (listed above) to install and maintain equipment owned by Ticketmaster at the event venue box offices.  On information and belief, the Ticketmaster equipment includes printers, routers, access points, network switches, and credit card swipers installed and maintained at the event venues, as well as event entry scanning and access control devices.  On information and belief, Ticketmaster exerts control over the equipment and the space occupied by the equipment pursuant to the following terms, conditions, obligations, and responsibilities specified in the contracts with the event venue owners.

    (a)    On information and belief, Ticketmaster maintains sole and exclusive ownership of the equipment at all times.

    (b)    On information and belief, the event venue owner has no right, title or interest in the equipment and may only use the equipment as permitted by Ticketmaster pursuant to the terms of the contract.

  (c) On information and belief, Ticketmaster prohibits the event venue owner from moving the equipment or permitting the equipment to be moved without Ticketmaster's prior written permission.

  (d) On information and belief, Ticketmaster prohibits the event venue owner and its employees from altering, modifying, copying, or adding to the equipment without Ticketmaster's prior written permission.

  (e) On information and belief, Ticketmaster pays the costs for installing the equipment at the event venue box office, as well as the monthly communication network connection costs for the equipment.

  (f) On information and belief, Ticketmaster is responsible for removing the equipment from the event venue upon termination of the contract between Ticketmaster and the event venue owner.

15. On information and belief, Ticketmaster has agents and/or employees who maintain a significant presence in this judicial district. On information and belief, Ticketmaster employees and/or agents install the equipment at the event venue box offices, and provide ordinary and routine maintenance, repair, and support of the equipment in the space occupied at the event venue box offices. On information and belief, the event venue box office staff act as Ticketmaster's agents in providing services to Ticketmaster customers who purchased tickets on Ticketmaster's online primary and secondary market ticket sales platform. On information and belief, pursuant to the training and instructions provided by Ticketmaster, the event venue box office staff operate the Ticketmaster-owned equipment installed at the event venue box office to communicate with Ticketmaster's network system which embody and practice the patented

inventions, thereby committing and continuing to commit acts of patent infringement alleged herein, as described in more detail in the counts below.

16. On information and belief, Ticketmaster conducts regular business at event venue box offices in this judicial district.  On information and belief, the Ticketmaster enters into contracts with event venue owners having multiple year renewable terms and each such event venue hosts several events each year of the contract.  Ticketmaster also offers training and support materials for box office staff regarding the primary and secondary market electronic ticket sales platform and venue access control systems.  Ticketmaster also advertises and provides Ticketmaster customers with ticketing services at the event venue box offices if Ticketmaster customers encounter technical difficulties with tickets purchased on the infringing primary and secondary market ticket sales platform.

17. Ticketmaster's infringement of DTS's patents, as described in more detail below, is substantially related to Ticketmaster's regular and established places of business in this judicial district because the tickets subject to the box office ticketing services are purchased by Ticketmaster customers via the www.ticketmaster.com, www.livenation.com, www.ticketsnow.com, www.ticketexchangebyticketmaster.com, and www.tradedesk.ticketmaster.com websites on the infringing Ticketmaster integrated primary and secondary market ticket sales platform, tokens establishing the validity and authenticity of the tickets are stored on the infringing Ticketmaster network system database, and the box office ticketing services involve the use of the Ticketmaster-owned equipment at the event venue box office to communicate with the infringing Ticketmaster network system database.

18. This Court has personal jurisdiction over Live Nation because Live Nation has committed and continues to commit acts of infringement in this judicial district in violation of at least 35 U.S.C. § 271(a).

19. This Court also has personal jurisdiction over Live Nation because Live Nation has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas and this judicial district. In particular, this Court has personal jurisdiction over Live Nation because, *inter alia*, Live Nation, on information and belief: (1) has substantial, continuous, and systematic business contacts with the State and this judicial district; (2) owns, manages and/or operates facilities in this State and this judicial district; (3) enjoys substantial income from its operations in this State and this judicial district; (4) employs Texas residents in this State and this judicial district; and (5) solicits business and makes, uses, offers for sale, and/or sells infringing products and services in this State and this judicial district.

20. Live Nation has purposefully availed itself to the privileges of conducting business within this judicial district, has established sufficient minimum contacts with the judicial district such that it reasonably should know and expect that it could be hauled into court in this judicial district, has purposefully directed activities at residents of this judicial district, and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

21. Live Nation has purposefully directed activities at residents of this judicial district, including the implementation and use of its primary and secondary market verified electronic ticket sales and venue access control systems embodying and practicing the patented inventions, thereby committing and continuing to commit acts of patent infringement alleged herein.

22. On information and belief, Live Nation regularly conducts and solicits business in this judicial district, including through the implementation and use of its primary and secondary market electronic ticket sales platform and venue access control systems at venues Live Nation owns, operates, and/or manages including, for example, the Aztec Theatre at 104 N. St. Mary's Street, San Antonio, Texas 78205, the Scoot Inn, 1308 E 4th St, Austin, TX 78702, and Emo's Austin, 2015 E Riverside Dr, Austin, TX 78741. Live Nation has derived and continues to derive substantial revenues from its acts of patent infringement committed in this judicial district.

23. Venue is proper in this judicial district for Live Nation under 28 U.S.C. § 1400(b) because, among other reasons, Live Nation is registered to do business in the State of Texas, has committed acts of infringement in this judicial district, and has a regular and established place of business within this judicial district.

24. On information and belief, Live Nation maintains a significant physical presence in this judicial district. On information and belief, Live Nation has a regular and established place of business in this judicial district at the Aztec Theatre, 104 N. St. Mary's Street, San Antonio, Texas 78205. In addition, on information and belief, Live Nation employs a number of persons in this judicial district and derives and has derived substantial revenue from goods and services provided to persons or entities in this judicial district and from infringing acts occurring within this judicial district.

## BACKGROUND

### The Invention

25. Kenneth Kalb, Michael Tracy, and Barry Shapira are the inventors of U.S. Patent No. 9,508,207 ("the '207 patent"). Thomas Buscher and Christina Liao joined Messrs. Kalb and Tracy as inventors of U.S. Patent No. 9,576,255 ("the '255 patent"). The '207 and '255 patents

are collectively referred to hereinafter as the "Asserted Patents". True and correct copies of the Asserted Patents are attached as Exhibits A-1 and B-1, respectively.

26. The Asserted Patents resulted from the pioneering efforts of the named inventors in the area of ticketing and access control systems. These efforts resulted in the development of a method and apparatus for network controlled access to physical spaces and ticketing systems. At the time of these pioneering efforts, the most widely implemented technology used static tickets, passes, and/or devices to provide access to a physical location, event, or service. In that type of system, a credential was created to provide the holder access rights to a location, event, or public transportation system. The credential was typically, but not always, in the form of a physical ticket or pass.

27. While such systems permitted access to the location, event, or transportation service, the use of physical tickets gave rise to counterfeit and fraudulent tickets. Various practices evolved to counter the use of counterfeit or otherwise fraudulent tickets including through use of printing techniques, such as those used in currency control.

28. Additionally, to combat the possibility of multiple use of the same ticket, ticket issuers introduced readable code technology so that, via a scanner, a real-time inventory of tickets can be created and subsequent uses of a ticket could be prevented. Such readable code, in the form of a bar code, QR code, or other two-dimensional code, while helpful in detecting subsequent uses of a particular readable code, could easily be duplicated physically or electronically, and thus were subject to counterfeiting by unscrupulous parties. A valid ticket-holder could then be denied entry where a duplicate ticket was scanned before the valid ticket-holder arrived at the event or location.

29. Another disadvantage of then-existing technology was the prevalence of "scalping" or resale of the ticket by the original purchaser such that the ticket issuer does benefit from the resale of the ticket. In some instances, a scalper or reseller will purchase the tickets from the original ticket issuer with no intention of using the ticket. Such practices create a constraint on the number of tickets available to those who desire to use the ticket, artificially driving up demand for the ticket and allowing the reseller to profit by selling at a higher price than the face value of the ticket set by the original issuer.

30. The inventors conceived of the inventions claimed in the Asserted Patents as a way to combat the disadvantages identified above.

**Advantage Over the Prior Art**

31. The patented inventions disclosed in the Asserted Patents, provide many advantages over the prior art, and in particular improved the operations of static ticketing systems for providing controlled access to events, premises, transportation and the like. (*See* '207 patent at 1:50-51; '255 patent at 2:29-31.) One advantage of the patented inventions is tying the credential to a specific device to prevent the sharing of the credential with another user. (*See* '207 at 3:49-51; '255 patent at 4:19-21.)

32. Another advantage of the patented inventions is associating each ticket with one or more dynamic links that controls the access parameters associated with a ticket. (*See, e.g.*, '207 at 7:38-42; '255 patent at 2:45-49.)

33. Another advantage of the patented inventions is placing limits on the resale of a ticket on the secondary market. (*See* '255 patent at 12:33-42.)

34. Because of these significant advantages that can be achieved through the use of the patented invention, DTS believes that the Asserted Patents present significant commercial

value for companies like Ticketmaster and Live Nation.  Indeed, Ticketmaster is the official ticketing partner of the NFL, NHL, NBA, and dozens of MLB and MLS teams.  *See* *https://www.ticketmaster.com/nfl*; *https://www.ticketmaster.com/nhl*; https://www.forbes.com/sites/michaellore/2019/12/03/ticketmasters-new-digital-technology-eliminating-ticket-fraud-in-the-nfl.  In addition, Ticketmaster is the primary ticketing servicer for many concert and/or sporting venues around the country.  *See* https://www.tdgarden.com/events/ticket-info/safetix; https://www.mayociviccenter.com/events/box-office/mobile-ticket-entry/; https://www.gassouthdistrict.com/events/ticketing-information/ticketmaster; https://www.unitedcenter.com/venue/mobile-ticketing-guide/.  Additionally, on information and belief, Live Nation utilizes its affiliate Ticketmaster's ticketing management platform almost exclusively at the venues which Live Nation owns, operates, and/or manages.

**Technological Innovation**

35. The patented inventions disclosed in the Asserted Patents resolve technical problems related to ticketing and access control systems, particularly problems related to limiting access to authorized persons only, including limiting the conditions under which the authorized access can be transferred to another person.

36. As the Asserted Patents explain, one of the limitations of the prior art as regards controlling access to a physical space was the requirement to provide some combination of key, pass card, and/or access code, or the like to permit entry of authorized visitors.  (*See* '207 patent at 1:7-15; '255 patent at 1:10-18.)

37. More specifically, with respect to controlling access to events such as concerts, movies, plays, and the like, controlled access has typically been accomplished through the use of

tickets or passes.  (*See* '255 patent at 1:50-54.)  The use of keys, tickets, passes, and even access codes was susceptible to counterfeit and/or abuse and often resulted in unauthorized persons gaining access to events, locations, or services for which an entity sought to limit said access.

38. The claims of the Asserted Patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the Asserted Patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of preventing unauthorized access to controlled spaces, events, or services.

39. In particular, the claims of the '207 patent recite inventive concepts that are not merely routine or conventional use of ticketing and access control systems.  Instead, the patented inventions disclosed in the '207 patent provide new and novel solutions to specific problems related to improving the authentication function of these ticketing and access control systems.

40. Moreover, the claims of the '255 patent further improve on these ticketing and access control systems, specifically in the context of secondary market ticketing systems, and the like so that use, re-use, and re-sale of a ticket can be controlled by the issuer and not solely by a purchaser or user.

41. And finally, the patented inventions disclosed in the Asserted Patents do not preempt all the ways that ticketing and access control systems may be used to improve the control of access to physical locations, events, transportation systems and the like, nor do the Asserted Patents preempt any other well-known or prior art technology.

42. Accordingly, the claims in the Asserted Patents recite a combination of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than a patent-ineligible abstract idea.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,508,207

43. The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

44. On November 29, 2016, the '207 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Method and Apparatus for Network Controlled Access to Physical Spaces"

45. DTS is the assignee and owner of the right, title and interest in and to the '207 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

46. On information and belief, Defendants have and continue to directly infringe one or more claims of the '207 patent by selling, offering to sell, making, using, and/or providing and causing to be used one or more methods for electronic ticketing and/or access control systems, which by way of example include Ticketmaster's SafeTix ticketing management system (the "Accused Instrumentalities").

47. On information and belief, the Accused Instrumentalities perform a method for providing access to a premises.

48. Exemplary infringement analysis showing infringement of claim 1 of the '207 patent is set forth in Exhibit A-1.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendants with respect to the '207 patent. DTS reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '207 patent.

49. The Accused Instrumentalities infringed and continue to infringe at least claim 1 of the '207 patent.

50. Each of Defendant was made aware of the '207 patent and it infringement thereof at least as early as the filing of the complaint.

51. On information and belief, since Defendant Ticketmaster received notice, Ticketmaster has induced and continues to induce others to infringe at least one claim of the '207 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to each of Ticketmaster's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '207 patent.

52. In particular, Ticketmaster's actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, the Ticketmaster has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Ticketmaster has had actual knowledge of the '207 patent and knowledge that its acts were inducing infringement of the '207 patent since Ticketmaster received notice that such activities infringed the '207 patent.

53. In particular, Ticketmaster provides knowledge and support materials for third parties to integrate the Accused Instrumentalities into their own mobile or web applications. (*See* https://developer.ticketmaster.com/products-and-docs/apis/partner/; https://developer.ticketmaster.com/products-and-docs/apis/partner/safetix/; https://business.ticketmaster.com/safetix/; https://ignite.ticketmaster.com/.) Additionally, Ticketmaster provides support for ticket purchasers and ticket holders in using tickets that utilize

the Accused Instrumentalities.  (*See* https://www.ticketmaster.com/safetix; https://help.ticketmaster.com/hc/en-us/search?utf8=%E2%9C%93&query=safetix.)

54. On information and belief, Ticketmaster is liable as a contributory infringer of the '207 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States ticketing management systems to be especially made or adapted for use in an infringement of the '207 patent.  The Accused Instrumentalities are material components for use in practicing the '207 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

55. Since at least the filing of the complaint, each Defendants' infringement has been and continues to be willful.

56. DTS has been harmed by the Defendants' infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,576,255**

57. The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

58. On February 21, 2017, the '255 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Method and Apparatus for Network Controlled Ticket Access"

59. DTS is the assignee and owner of the right, title and interest in and to the '255 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

60. On information and belief, each Defendant has and continues to directly infringe one or more claims of the '255 patent by selling, offering to sell, making, using, and/or providing and causing to be used one or more methods for electronic ticketing and/or access control

systems, which by way of example include Ticketmaster's SafeTix ticketing management system (the "Accused Instrumentalities").

61. On information and belief, the Accused Instrumentalities performs a method for providing a ticket to a ticket holder.

62. Exemplary infringement analysis showing infringement of claim 10 of the '255 patent is set forth in Exhibit B-1. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendants with respect to the '255 patent. DTS reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '255 patent.

63. The Accused Instrumentality infringed and continues to infringe at least claim 10 of the '255 patent.

64. Each Defendant was made aware of the '255 patent and it infringement thereof at least as early as the filing of the complaint

65. On information and belief, since at least the time Ticketmaster received notice of, Ticketmaster has induced and continues to induce others to infringe at least one claim of the '255 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Ticketmaster's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '255 patent.

66. In particular, Ticketmaster's actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the

Accused Instrumentalities. On information and belief, the Ticketmaster has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Ticketmaster has had actual knowledge of the '255 patent and knowledge that its acts were inducing infringement of the '255 patent since Ticketmaster received notice that such activities infringed the '255 patent.

67. In particular, Ticketmaster provides knowledge and support materials for third parties to integrate the Accused Instrumentalities into their own ticketing management systems. (*See* https://developer.ticketmaster.com/products-and-docs/apis/partner/; https://developer.ticketmaster.com/products-and-docs/apis/partner/safetix/; https://business.ticketmaster.com/safetix/; https://ignite.ticketmaster.com/.) Additionally, Ticketmaster provides support for ticket purchasers and ticket holders in using tickets that utilize the Accused Instrumentalities. (*See* https://www.ticketmaster.com/safetix; https://help.ticketmaster.com/hc/en-us/search?utf8=%E2%9C%93&query=safetix.)

68. On information and belief, Ticketmaster is liable as a contributory infringer of the '255 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States ticketing management systems to be especially made or adapted for use in an infringement of the '255 patent. The Accused Instrumentalities are material components for use in practicing the '255 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

69. Since at least the filing of the complaint, each Defendants' infringement has been and continues to be willful.

70. DTS has been harmed by the Defendants' infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, DTS demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DTS demands judgment for itself and against Defendants as follows:

      A.      An adjudication that the Defendants have infringed the '207 and '255 patents;

      B.      An award of damages to be paid by Defendants adequate to compensate DTS for Defendants' past infringement of the '207 and '255 patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

      C.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of DTS's reasonable attorneys' fees; and

      D.      An award to DTS of such further relief at law or in equity as the Court deems just and proper.

Dated: August 3, 2023

**DEVLIN LAW FIRM LLC**

*/s/Robert Kiddie*
Timothy Devlin
tdevlin@devlinlawfirm.com
Robert Kiddie
rkiddie@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff*
Dynamic Ticket Systems LLC